IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

FELIZ-GLYNN PROPERTIES LLC,     )
    )
        Plaintiff,            )     TC-MD 110842C
    )
    v.                    )
    )
YAMHILL COUNTY ASSESSOR,     )
    )
        Defendant.          )     **DECISION OF DISMISSAL**

This matter is before the court on Defendant's motion to dismiss, included within its

Answer, filed on July 27, 2011. Defendant alleges in its Motion that Plaintiff did not file its

appeal within 30 days of the date of the mailing of the county board of property tax appeals

(BOPTA) order. The parties were to submit written briefs on the motion; briefing closed

October 21, 2011. Plaintiff filed its Response to Defendant's Motion to Dismiss Due to

Untimely Filing (Response) on September 23, 2011. Defendant filed its Response to Plaintiff's

Response (Reply) on October 21, 2011. The court held a hearing on the matter December 14,

2011. Plaintiff was represented by Sharon Tuppan (Tuppan), Attorney at Law. Christopher

Robinson (Robinson), Attorney at Law, is also an attorney of record. Defendant was represented

by Brian Linke (Linke).

## I. STATEMENT OF FACTS

This appeal involves a conflict of opinions as to whether the BOPTA clerk actually

mailed the Real Property Order No. 108 (BOPTA order) to Plaintiff's counsel. That BOPTA

order concerned a property appeal petition filed on behalf of Feliz-Glynn, Properties LLC,

property tax Account 164878.

BOPTA held a hearing on March 3, 2011. (Ptf's Compl, Ex A, Test. of Linke.) The

BOPTA order indicates in the lower left corner that it was "Mailed * * * 3/3/11." (Ptf's Compl,

Ex A; Ptf's Resp, Ex 1 at 1.) The BOPTA order has Plaintiff's counsels' correct mailing address

DECISION OF DISMISSAL   TC-MD 110842C                    1

at the top.[1] (*Id.*) The order submitted by Plaintiff is stamped as being "Received" by Tuppan's office May 31, 2011, and has a he and written note patient indicating that it was received by "E-mail." (*Id.*)

Defendant contends the BOPTA order was mailed to Tuppan on March 3, 2011, as indicated on that order. During the December 14, 2011, oral argument, Defendant asserted that its office received a copy of the BOPTA order the day after the indicated mailing date, which at least suggests that BOPTA at least processed the order and did not simply ignore or misplace it. Plaintiff asserted that the order was not mailed until May 31, 2011, which is the date Tuppan's office received an e-mail copy of the order from BOPTA.

The known chain of events leading up to the transmission of the BOPTA order to Tuppan on May 31, 2011, is as follows. On May 31, 2011, a paralegal at Robinson's office sent an e-mail to the BOPTA clerk Becky Stern requesting she "issue a new order." (Ptf's Resp, Ex 3 at 1.) That e-mail stated that Robinson's office "never received a BOPTA order for Petition no. 108." (*Id.*) That same day the BOPTA clerk e-mailed the paralegal at Robinson's office a copy of the BOPTA order that was signed and dated March 3, 2011. (Ptf's Resp, Ex 4 at 1-2.) On June 16, 2011, via e-mail, Robinson asked the BOPTA clerk to reissue the order "with an appropriate date so we can appeal to tax court." (Ptf's Resp, Ex 5 at 1.) On June 27, 2011 Tuppan sent the BOPTA clerk a letter, via e-mail, stating "we * * * hereby demand that the Board issued its order by the statutory deadline, which we believe is June 30, 2011." (*Id*. at 2.) The clerk responded on June 27, 2011, stating "[a] new order can not be issued as the Board has issued its order and there was no defect found with the order to cause it to be amended." (*Id*. at 4.) On June 29, 2011, Tuppan e-mailed the BOPTA clerk requesting proof that the order was mailed to Robinson's office on March 3, 2011, and that it was indeed sent to that office rather

---

[1] Tuppan works for Robinson. The two work out of Robinson's office. The BOPTA order has Robinson's Lake Oswego law office mailing address on it. The court will refer to that office as either Tuppan's office or Robinson's office as deemed contextually appropriate.

than directly to the taxpayer. (Ptf's Resp Ex 2 at 1.) Shortly thereafter that same day, the

BOPTA clerk e-mailed Tuppan, stating:

> "My system prints out the taxpayer's address only if there is no listed
> representative. In this case there is a listed representative, Mr. Robinson, and
> when I bring up the record it lists Mr. Robinson's address in Lake Oswego as the
> mailing address. I mailed the order out with all the other orders from March 3 on
> March 3. I do not mail by traceable mail due to the cost and we have not had any
> previous issues. The copy you received by e-mail May 31st was in response to an
> inquiry from your office and is a copy from our scanned records that had been
> scanned into our system in April. I am sorry you can not locate the order however
> I can say with certainty that it was mailed March 3rd to your office as I was the
> one handling that task myself. I mailed orders the day they were signed."

(*Id*.)

## II. ANALYSIS

Oregon has a structured appeals system for taxpayers to follow when challenging the

Real Market Value (RMV) assigned to their properties. The first step of the process is to file a

petition with the local county BOPTA where the property is located. ORS 309.026(2)

(authorizing BOPTA to hear petitions for reduction in assessed value, real market value and

maximum assessed value); ORS 309.100(1) (authorizing property owners and others with an

interest in the property to petition BOPTA for the types of relief allowed under ORS 309.026);

ORS 305.275(3) (precluding appeals to the Magistrate Division of the Tax Court if a taxpayer

may appeal to BOPTA).[2] Taxpayers are required to file appeals with the appropriate county

board by December 31 of the current tax year. ORS 309.100(2).

If the taxpayer is unhappy with the BOPTA decision, the taxpayer can file an appeal with

the magistrate division of the Tax Court "within 30 days after the * * * date of mailing of the

order." ORS 305.280(4). Defendant contends the Order was mailed on March 3, 2011. The

deadline for appeal on an Order mailed on that date is April 2, 2011. Plaintiff filed an appeal

with BOPTA postmarked June 27, 2011. If the order was indeed mailed March 3, 2011, then

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2009.

Plaintiff's appeal to this court is untimely.

Plaintiff requested the court reject Defendant's motion. Plaintiff makes several arguments in support of that request. First, Plaintiff argues that "BOPTA has no form of proof of mailing or delivery or any other system in place to trace its mail." (Ptf's Resp at 1) (Ptf's Resp to Def's Mot). Defendant responds that applicable administrative rules do not require the BOPTA to keep records as to whom orders are mailed or delivered. (Def's Reply at 3.) The court agrees. Defendant cities OAR 150-309.110(1)-(A)(5), which requires BOPTA to deliver "to the officer in charge of the roll and the assessor copies of orders on the same day they are mailed or delivered to the petitioner or petitioner's representative." There is no requirement in the statutes or regulations (OARs) that BOPTA keep a record of mailing. Defendant is the "officer in charge of the roll" and it received its copy March 4, 2011, the day after BOPTA alleges the order was mailed. The fact that Defendant received a copy of the order provides some evidence that the order was properly processed and likely mailed to Plaintiff.

This court has previously ruled that failing to receive an order does not excuse a taxpayer from timely appealing to BOPTA. *See Pliska v. Multnomah County Assessor*, TC-MD 000912E, WL 33233813 at *2 (Nov. 9, 2000). In *Pliska*, the court stated in relevant part: "[p]roperty owners are expected to know when they should receive their property tax statements. Failing to receive a property tax statement * * * does not excuse a taxpayer from failing to timely appeal to the county board." (*Id*.) (Citing ORS 311.250(2)). Although *Pliska* involved the nonreceipt of a property tax statement, the same general principle applies to BOPTA orders. Accordingly, the court rejects Plaintiff's first argument.

Plaintiff's second argument is that Tuppan's office has a "specific and long-standing procedure in place to process incoming mail delivered by the United States Postal Service, including BOPTA orders[,]" which includes a "computerized database system [that] is programmed with important dates such as the last day by statute that the board shall issue orders.

DECISION OF DISMISSAL  TC-MD 110842C                                              4

For the 2010-11 tax year and the BOPTA season, that date was June 30, 2011." (Ptf's Resp at 2.) Tuppan stated that "[a]t least 30 days prior to that deadline, one staff member begins to check for any appeal without a corresponding board order." (*Id*.)

The problem with that argument is that June 30, 2011, was not the last day for BOPTA to issue orders. June 30 is the date by which an *amended* order correcting a clerical error or error of jurisdiction must be issued by BOPTA. ORS 309.110(5). All regular functions of the BOPTA must be completed no later than April 20 each year. ORS 309.026(1) (requiring BOPTA to convene no earlier than the first Monday in February each year and in time "for the Board to complete [its] functions * * * by April 15"); OAR 150-309.110(1)-(A)(4) (requiring that BOPTA mail orders "within five days of the date issued and no later than five days after the board has adjourned"). In this case that deadline would have been April 20, 2011.

Had Tuppan's computerized database system been programmed with the April 20, 2011, deadline, then, having followed its own established procedures, a staff member would have contacted the BOPTA clerk on or about March 20, 2011. March 20, 2011, was within the 30-day statutory appeal period from the March 3, 2011, date that BOPTA mailed its order, and the appeal of the matter to this court would presumably have been timely filed, obviating the need for the time and effort the parties and the court have expended addressing the untimeliness issue pressed by Plaintiff.

Finally, Plaintiff asserts that there was a prior instance in which the Yamhill County BOPTA clerk incorrectly delivered 13 orders, albeit in an unrelated case, but in the same year, as proof that the BOPTA clerk failed to mail Plaintiff's Order. (Ptf's Resp at 2.) Defendant responds to Plaintiff's attempt to show a pattern of failed delivery of BOPTA orders by the Yamhill County BOPTA clerk by explaining that those 13 orders "were hand delivered immediately after the BOPTA hearings to the Plaintiff's representative by the BOPTA clerk," a practice allowed by OAR 150-309.110(1)-(A)(3). (Def's Reply at 3.) Plaintiff asserts that the 13

DECISION OF DISMISSAL  TC-MD 110842C                                                    5

orders were given to someone not associated with Plaintiff's counsel, "notwithstanding that Plaintiff's counsel was counsel of record." (Ptf's Resp at 2-3.)

The court finds that argument unpersuasive. The 13 orders were part of a group of 80 apparently related properties, petitions for which were filed collectively with BOPTA, with the orders hand delivered as opposed to mailed. (*Id.*) Tuppan does not state that she or Robinson were present at the hearing on that appeal, or refute Defendant's assertion that the orders were hand delivered by the BOPTA clerk to Plaintiff's representative. There are a number of people who could qualify as a representative of Plaintiff under 309.100(4) to whom it would have been appropriate for the BOPTA clerk to hand deliver the orders.[3] The court is simply not persuaded that those 13 orders in an unrelated matter were in fact incorrectly delivered, or that, if they were, such action would be sufficient to establish a pattern of mishandling by the Yamhill county BOPTA clerk. In fact, that argument is more of a red herring given the fact that primary responsibility for tracking BOPTA orders lies with the taxpayer or the taxpayer's representative. And, as indicated above, had Plaintiff's reprentative established an accurate tracking system tied to the April 20 BOPTA deadline for mailing orders, the appeal in this case would presumably have been timely filed.

Finally, Plaintiff argues that it will incur economic hardship if its appeal is dismissed. That is true, assuming additional proceedings would achieve a reduction in value. However, economic hardship is not proper legal grounds for the court to ignore the untimely filing.

---

[3] ORS 309.100(4)(a) states:
> "The following persons may sign a petition and appear before the board on behalf of a person described in subsection (1) of this section:
>> (A) A relative, as defined by rule adopted by the Department of Revenue, of an owner of the property.
>> (B) A person duly qualified to practice law or public accountancy in this state.
>> (C) A legal guardian or conservator who is acting on behalf of an owner of the property.
>> (D) A real estate broker or principal real estate broker licensed under ORS 696.022.
>> (E) A state certified appraiser or a state licensed appraiser under ORS 674.310 or a registered appraiser under ORS 308.010.
>> (F) The lessee of the property."

### III. CONCLUSION

After careful review of the evidence and relevant law, Plaintiff's materials shows the

BOPTA order was mailed to Plaintiff March 3, 2011. The Complaint was postmarked on Jun 27,

2012. This interval is longer than the 30 days required by ORS 305.280(4). Plaintiff has not

presented any fact or argument which prevents the application of this statute. Accordingly,

Defendant's motion to dismiss must be granted. Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant's motion to dismiss is granted

and Plaintiff's Complaint is dismissed.

Dated this ____ day of February 2012.


DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on February 17, 2012. The Court filed and entered this document on February 17, 2012.*